**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ROBERT SWARTZ,

      Plaintiff,

  vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 1:10-cv-605

Barrett, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Robert Swartz filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error, which Defendant disputes, and also moves the Court to remand this case pursuant to Sentence Six of 42 U.S.C. §405(g).  As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record and Plaintiff's Sentence Six remand request should be denied.

**I.  Summary of Administrative Record**

On March 12, 2007, Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB) alleging a disability onset date of November 6, 2003 when Plaintiff was injured in a motor vehicle accident.  He alleges a right shoulder injury, two herniated discs in his neck, spinal stenosis, right leg numbness, and migraine headaches.  (Doc. 7-5 at 2-8, Doc. 7-6 at 11-12).  Plaintiff was

1

born on April 23, 1960, thus, he was 43 years old at the time of his alleged disability and 48 years old at the time of the ALJ's decision.  (Doc. 7-2 at 20).  After Plaintiff's claims were denied initially and upon reconsideration, (Doc. 7-3 at 2-5, Doc. 7-4 at 2-15), he requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  (Doc. 7-4 at 18-21).  On February 4, 2009, an evidentiary hearing was held via video conference in Roanoke, Virginia.  Plaintiff and his counsel appeared in Portsmouth, Ohio.  (Doc. 7-2 at 22-90).  At the hearing, ALJ Karen B. Peters heard testimony from Plaintiff and Dr. Donald Anderson, an impartial vocational expert ("VE Anderson").

On March 30, 2009, the ALJ entered her decision denying Plaintiff's SSI and DIB applications.  (*Id.* at 7).  The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1.  The claimant met the insured status requirements of the Social Security Act through September 30, 2008.

2.  The claimant has not engaged in substantial gainful activity since November 6, 2003, the alleged onset date (20 CFR 404. 571 *et seq.,* and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: a herniated disc in the cervical region, headaches, morbid obesity, major depressive disorder with bipolar components, anxiety, and obsessive compulsive disorder (20 CFR 404.1521 *et seq.* and 416.921 *et seq*).

    ……………………

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).  Pursuant to Social Security Ruling 02-01P, the undersigned considered the claimant's morbid obesity as an aggravating factor to his combined impairments.

    ……………………

5.  After careful consideration of the entire record, the undersigned finds that

the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following exceptions: the claimant can not perform overhead lifting, can not work around heights or dangerous machinery, can only perform posturals occasionally, requires a temperature controlled indoor environment, can not work around toxic or heavy odors, such as paint fumes and perfumes, can not work directly with the public, but can have incidental public contact, is limited to occasional contact with co-workers, and is limited to simple, non-complex tasks.

……………………

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

……………………

7.      The claimant was born on April 23, 1960 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

……………………

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

……………………

9.      The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

……………………

10.     Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a, 404.1568(d), 416.969, 416.969a, and 416.968(d)).

……………………

11.     The claimant has not been under a disability, as defined in the Social Security Act, from November 6, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

……………………

(*Id.* at 12-21).  Thus, the ALJ concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB.  (*Id.*).

Plaintiff's request for review by the Appeals Council was denied (*Id.* at 2-6), making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Applicable Law

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §405(g).  The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's denial of benefits. Substantial evidence is "such relevant evidence as a reasonable mind might except as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hephner v. Matthews,* 574 F.2d 359 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. … The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

4

To qualify for DIB, a claimant must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act.  42 U.S.C.  §§416(i), 423.  To qualify for SSI, the claimant must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. §1382(a); 20 C.F.R. §416.202.  Eligibility is dependent upon disability, income, and other financial resources.  20 C.F.R.  §416.202.  Establishment of a disability is contingent upon two findings.  First, the claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §423(d)(1)(A).  Second, the impairments must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §423(d)(2); 20 C.F.R §416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520.  First, the Commissioner determines whether the claimant is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends.  Second, if the claimant is not currently engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends.  Third, if the claimant has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing).  If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded.

5

20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the claimant's regular previous employment.  If the claimant is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the claimant can perform.  *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981).

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Jones v. Commissioner of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003).  The Commissioner may meet his burden of identifying other work the claimant can perform through reliance on a vocational expert's testimony to a hypothetical question.  To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the vocational expert must accurately reflect the claimant's mental and physical limitations.  *Early v. Commissioner of Social Security,* 594 F.3d 504, 516 (6th Cir. 2010); *Howard v. Commissioner of Social Security,* 276 F.3d 235, 241 (6th Cir. 2002); *Felisky,* 35 F.3d at 1036.  However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."  *Stanley v Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994).

### III.  Analysis

On appeal to this Court, Plaintiff assigns two errors.  First, Plaintiff contends that the ALJ erred when she rejected the opinion of Plaintiff's treating physician, David P. Herr, D.O. ("Dr. Herr"), and Plaintiff's treating mental health therapist, Peggy Foster, APRN, CNS ("Ms. Foster").  Second, Plaintiff argues that the ALJ erred when she failed to consider how Plaintiff's obesity impacted his ability to work.  In addition, Plaintiff claims that new evidence submitted to the Appeals Council concerning medical treatment and vocational assessment obtained after the ALJ closed the record warrants remanding the case for further development at the administrative level pursuant to Sentence Six of 42 U.S.C. §405(g).  For the reasons that follow, the Court recommends that the decision of the ALJ be affirmed.

### A.  The ALJ's Rejection of Treating Physician's Opinion

In Plaintiff's first assignment of error, he argues that the ALJ erred by failing to afford adequate weight to the opinions of Plaintiff's treating physician, Dr. Herr, and Plaintiff's treating mental health therapist, Ms. Foster.  20 C.F.R. §404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* (emphasis added).

However, in determining the weight to give to *any* medical source opinion, an ALJ must also consider: 1) the examining relationship between the medical source and claimant; 2) the treatment relationship, including the length of treatment, frequency of examination, and nature and extent of relationship; 3) support by medical evidence; 4)

consistency of the opinion with the record as a whole; 5) the source's area of specialization; and 6) any other factors which support or contradict the opinion.  *Id.  See also Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004).

Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her [sic] rejection."  *Jones v. Commissioner of Social Security,* 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. §1527 (d)(2).  This has come to be known as the "good reason" requirement.   Likewise, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions.  *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine).

### 1.  Dr. Herr

On November 6, 2003, Plaintiff was involved in an accident while driving a truck for his then employer.  He reported subsequent neck, shoulder, lower back pain, and headaches. (Doc. 7-7 at 15).  Plaintiff underwent physical therapy in early 2004 and was released to work with no restrictions by his physician, Dr. Herr, which was reiterated on November 16, 2005 and February 16, 2006.  (Id. at 9, 12, 18).  However, in March, 2006, Plaintiff was dismissed from the CDL class he was enrolled in as part of his vocational rehabilitation effort for disruptive behavior.[1]  (Id. at 7).  Based on this dismissal, Plaintiff's caseworker phoned Dr.  Herr and discussed a possible referral for

---

[1] Plaintiff testified at the hearing that he was removed from the class because he complained about the strong smell of paint fumes in the classroom.  Plaintiff asserts that the fumes were causing migraine headaches. (Doc. 7-2 at 56-58).

counseling and a psychological evaluation, which Dr. Herr agreed to do.  (Id. at 7-8).

On May 7, 2007, Dr. Herr noted that "over a period of three years beginning in March of

2004, I have come to believe that [Mr. Swartz] has a personality disorder that renders

him not capable of successfully completing vocational rehabilitation in spite of his

residual functional capacities."  (Id. at 109).  Dr. Herr further noted, on March 17, 2008,

that "Mr. Swartz is a very isolated man with significant mental health problems that have

adversely impacted his ability to maintain employment and in my opinion, constitute his

major impairment producing disability with respect to employment."  (Id. at 107).

Despite Dr. Herr previously noting that Plaintiff may return to work without any

physical limitations, he informed the Department of Jobs & Family Services that Plaintiff

could perform only about 4 hours of manual labor a day, for 3 days a week.  (Doc. 7-7 at

109, 115-117).  This limitation was based upon Plaintiff's explanation of what he could

do.  On March 17, 2008, Dr. Herr stated that Plaintiff had very good grip strength, a

normal gait, normal spinal range of motion, no neurologic deficits in the upper or lower

extremities, very good muscle development, and some calluses on his hands.  (Id. at

108).  At this time, Plaintiff reported that he had torn a roof off one building, and put a

roof on a mobile home on his property.  (*Id.* at 108).  Dr. Herr noted that Plaintiff had

considerable physical capabilities.  (*Id.*).

In her decision, the ALJ rejected Dr. Herr's assessment of Plaintiff's functional

limitations:

> [T]he objective medical evidence and the claimant's treatment history do
> not fully support his allegations on the severity of his functional limitations.
> On a February 16, 2006 checkup, Dr. Herr said he did not see any need to
> restrict the claimant to a level of work, and said the claimant was
> emotionally and psychologically very positive about returning to work
> (Exhibit 3F-3).  On March 24, 2006, Dr. Herr said some psychological

9

> blocks appeared to be impairing the claimant's capacity to complete vocational rehabilitation at this time (Exhibit 3F-1).  On March 17, 2008, Dr. Herr said the claimant had considerable physical capacities, believed the claimant's mental issues were the claimant's most compelling disability, and said the claimant needed to maintain mental health services to support his appeal for Social Security disability benefits (Exhibit 16F-2).  On a September 8, 2008 follow-up, Dr. Herr said the claimant sounded much better, was communicating well, and was staying on subjects with much less tendency to ramble (Exhibit 23F-2).

(Doc. 7-2 at 19).  Plaintiff contends that the limitations found by Dr. Herr were supported by ample objective evidence, including: the assessment and treatment notes of Ms. Foster, the observations of two state agency employees, Plaintiff's subjective complaints, and also the fact that Dr. Herr's opinion was consistent with the assessment of a licensed social worker.  (Doc. 13 at 17).  Although the opinions of treating physicians must be considered, ultimately the determination of a claimant's RFC is "reserved to the Commissioner."  20 C.F.R. §404.1527(d)(2), §1527(e)(2).

Contrary to Plaintiff's contentions, the opinions of the state agency reviewing psychologists support the ALJ's rejection of disabling mental limitations.  State agency reviewing medical sources are highly skilled medical professionals who are experts in Social Security issues.  *See* 20 C.F.R. §404.1527(f)(2)(I).  In appropriate circumstances, such as those present here, the opinions of a state agency reviewer may be entitled to more weight than a treating physician.  *See* 20 C.F.R. §404.1527(d)(2), (4); SSR 96-6p, 1996 WL 374180 ("In appropriate circumstances, opinions from state agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating and examining sources…").  In this case, reviewers Drs. Flynn and Casterline diagnosed depressive disorder, NOS, and anxiety disorder, NOS (Doc. 7-7 at 44, 46); yet, they assessed no limitations in

activities of daily living, only moderate limitations in maintaining social functioning, and mild limitations in maintaining concentration, persistence, or pace.  (Doc. 7-2 at 14, Doc. 7-7 at 51).  Also, they found Plaintiff to be "not significantly limited" in any area of understanding and memory and no more than "moderately limited" in the areas of sustained concentration and persistence, social interaction, and adaptation.  (Doc. 7-7 at 37-38).  As a result, the state agency reviewers did not set forth any disabling mental limitations.

Plaintiff also saw consultative psychologist, Norman L. Berg , Ph.D. ("Dr. Berg"),[2] who, on May 12, 2007, assessed a GAF score of 62,[3] which indicated only some mild symptoms of limitations.  (Doc. 7-2 at 16, Doc. 7-7 at 35).  Dr. Berg opined that Plaintiff had no limitation in understanding and following simple verbal instructions; only mild limitations in maintaining attention and concentration while doing work-related tasks; no more than mild-to-moderate limitations in relating adequately with others in a work setting; and no more than moderate limitations in coping with routine job stress.  (Doc. 7-2 at 16, Doc. 7-7 at 36).  Similar to the state agency reviewers, Dr. Berg's opinion did not support disabling mental limitations.

The ALJ adequately explains that the extreme limitations Dr. Herr detailed in his various assessments were inconsistent with his notes and with statements made by Plaintiff, including that he had been operating a backhoe and remodeling his mobile

---

[2] Dr. Berg is the only psychologist to examine Plaintiff.  Others who offered opinions on Plaintiff's mental health include a social worker, a nurse and staffers at the state agency.

[3] GAF is a score assigned to a person when considering all psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.  A GAF score of 61-70 indicate some mild symptoms (i.e., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (i.e., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.  See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34 (American Psychiatric Ass'n, 4th ed. Text rev. 2000) (DSM-IV-TR).

home (Doc. 7-2 at 14, Doc. 7-7 at 109) and that he could attend to his personal hygiene, cook, clean, do laundry, go grocery shopping (with assistance), care for his two goats and dog, and perform light work on his property. (Doc. 7-7 at 37-38). *See* 20 C.F.R. §404.1527(d)(4) ("Consistency." Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

In rejecting the limitations assessed by Dr. Herr, the ALJ explained that while she considered his opinion, she also found that it was inconsistent with the objective medical evidence in the file. (Doc. 7-2 at 15). The ALJ found that Dr. Herr is not a mental health expert and that his opinion is inconsistent with his notes and Plaintiff's daily activities. As such, she properly afforded his opinions little weight. (*Id.*). The ALJ gave the greatest amount of weight to the evidence received at the hearing level and only some weight to the opinions of the state agency medical experts. (Id. at 19). Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

**2. Ms. Foster**

Plaintiff asserts that the ALJ additionally erred in rejecting the opinion of his consulting therapist, Ms. Foster, that he was disabled. Plaintiff alleges that the ALJ erred in failing to consider the length and frequency of Ms. Foster's contact with Plaintiff, the consistency of Ms. Foster's opinion with other evidence, and Ms. Foster's specialty or area of expertise as it relates to Plaintiff's impairments, (i.e., her educational and professional background in social work/counseling).

Only an "acceptable medical source," generally a physician or psychologist, can be a treating source entitled to "controlling weight." *See* 20 C.F.R. §§404.1527(a)(2); 404.1527(d), 416.927(a)(2), 416.927(d). Ms. Foster, therefore, is not an acceptable

medical source.  However, SSR 06-03p, 2006 WL 2329939, provides that opinions from medical sources who are not "acceptable" medical sources should still be considered under the factors set forth in 20 C.F.R. §404.1527(d)(2), including "how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion."  *See Cruse v. Commissioner of Social Security*, 502 F.3d 532, 541 (6th Cir. 2007)(citations omitted).

On April 16, 2008, Ms. Foster completed a Mental Functional Capacity Assessment form at the request of the Adams County Department of Job and Family Services.  (Doc. 7-7 at 120-122).  Ms. Foster indicated that Plaintiff was markedly limited with respect to nearly every mental ability provided on the form.  (*Id.*).  Ms. Foster stated that Plaintiff was moderately limited with respect to the ability to remember locations and work-like procedures.  (*Id.*).  She diagnosed a GAF of 35.[4]  Glaringly absent from Plaintiff's assessment, however, is a reference to any objective medical evidence to support the claimed diagnoses.  Specifically, the assessment appears to have been based only on what the "client reports," that is, the subjective allegations of Plaintiff.  In addition, Ms. Foster noted on numerous occasions during this period that Plaintiff was doing better, socializing with neighbors and responding well to medication. (Doc. 7-7 at 123, 125-130; Doc. 7-8 at 57-59).  The ALJ stated that "since this GAF is inconsistent with the evidence in [sic] file, Ms. Foster's observations, and the claimant's activities of daily living, the undersigned gave it little weight."  (Doc. 7-2 at 17).

---

[4] A GAF score of 31-40 indicates some impairment in reality testing or communication (i.e., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (i.e., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34 (American Psychiatric Ass'n, 4th ed. Text rev. 2000) (DSM-IV-TR).

Furthermore, the Court notes that the ALJ did not, in fact, completely reject Ms. Foster's opinions. Rather, in accordance with SSR 06-03p, she expressly addressed it in her decision. (*Id.* at 16-17, 19). Although the ALJ did not find objective medical evidence to support a diagnosis of bipolar disorder, and a GAF of 35, the ALJ determined that Plaintiff's impairments included major depressive disorder with bipolar components, anxiety, and obsessive compulsive disorder. (Doc. 7-2 at 12). This determination was made despite the fact that the ALJ found Ms. Foster's opinions of Plaintiff's limitations to not be supported by the record or properly explained.

Plaintiff contends that the ALJ failed to consider the length and frequency of Ms. Foster's relationship with Plaintiff and her specialty or area of expertise. However, the Court notes that there is a distinction between what an ALJ must consider and what an ALJ must cite to in a written decision. *Queen City Home Health Care Co. v. Sullivan,* 978 F.2d 236, 243 (6th Cir. 1992) (citing *Walker v. Secretary of Health & Human Services.,* 884 F.2d 241, 245 (6th Cir. 1989) (evidence not cited by the ALJ may be relied on as substantial evidence in support of the ALJ's decision)). To the extent that Plaintiff is arguing that the ALJ was required to explicitly discuss each and every factor she considered when analyzing Ms. Foster's opinion, that argument is erroneous. *See Kornecky v. Commissioner of Social Security,* 167 F. App'x 496, 508 (6th Cir. 2006) ("an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (quoting *Loral Defense Systems-Akron v. NLRB.,* 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)). The ALJ's analysis and determination surrounding Ms. Foster's opinion was legally sufficient.

The ALJ's explanation for rejecting Ms. Foster's diagnoses is supported by substantial evidence.  In rejecting said diagnosis the ALJ properly recognized that Ms. Foster's opinions were inconsistent with the record as a whole, including her own notes, the opinions of the state agency reviewers and Dr. Berg, and Plaintiff's testimony as to his activities of daily living. (Doc. 7-2 at 17).  Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### 3.  Incomplete Records Review

Plaintiff also argues that the ALJ's reliance upon consultants who did not review Plaintiff's most recent mental health records is grounds for remand.  The regulations provide that one of the factors to consider in determining the weight to give to a medical opinion is "the extent to which an acceptable medical source is familiar with the other information in your case record."  20 C.F.R. §§404.1527(d)(6), 416.927(d)(6).  In *Blakely v. Commissioner of Social Security*, 581 F.3d 399, 408-409 (6th Cir. 2009),  the ALJ credited the opinions of consulting physicians over the opinion of the plaintiff's treating physician.  The Sixth Circuit held that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources."  (*Id.*, at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)).  However, in *Blakely* the court reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakely's treating sources," and that the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions.  *Blakely*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)).  Nevertheless, the Sixth Circuit reiterated the

15

general principle that an ALJ's failure to provide adequate explanation for according less than controlling weight to a treating source may be excused if the error is harmless or *de minimis*, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Id.* at 409 (*quoting Wilson v. Commissioner of Social Security*, 378 F.3d 541, 547 (6th Cir. 2004)).  Under *Blakely*, then, an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so.  If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis*.

In this case, the ALJ did not articulate the reason why some weight was given to the opinions of Drs. Berg, Flynn and Casterline but she did state the reasons why she gave little weight to the opinions of Dr. Herr and Ms. Foster.  Regardless, for the reasons set forth above, there is substantial evidence in the record to support the ALJ's decision and any error would be harmless.

### B.  Plaintiff's Obesity

Plaintiff's second statement of error provides that the ALJ erred by failing to consider how Plaintiff's obesity impacted his ability to work.  As a result, Plaintiff argues that the ALJ violated Social Security Ruling 02-01p ("SSR 02-01p").  (Doc. 13 at 19).  SSR 02-01p sets forth the SSA's policy used in evaluating obesity when completing the sequential benefits analysis.  SSR 02-01p provides that:

> [O]besity may be considered severe alone or in combination with another medically determinable impairment…the SSA will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe . . . a claimant's obesity must be considered not only at step 2 of the Commissioner's five step evaluation process, but also at the subsequent steps.

*See* SSR 02-01p, 2000 WL 628049 (Sept. 12, 2002).  *See also* 20 C.F.R. §404.1523 (explaining that if the SSA finds "a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.").  Even though obesity is to be considered during the disability determination, it "may or may not increase the severity or functional limitations of the other impairment" and should be evaluated on a case by case basis.  SSR 02-01p, 2000 WL 628049.  Obesity "is 'not severe' only if it is a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities."  Id.

In this case, contrary to Plaintiff's allegations, the ALJ considered his morbid obesity as an aggravating factor to his combined impairments and functional abilities. (Doc. 7-2 at 12).  However, the mere diagnosis of impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual.  *See McKenzie v. Commissioner of Social Security,* No 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen,* 853 F.2d 488, 489 (6th Cir. 1988).  Specifically, the Court notes that none of the medical experts of record, including Dr. Herr, reported that Plaintiff's obesity affected his abilities to function.  For example, on May 10, 2005, and July 28, 2005, Dr. Berger noted that Plaintiff weighed 265 pounds at 71 inches tall yet he could walk on his heels and toes, could walk around the room without difficulty, and exhibited no muscle weakness in his upper or lower extremities (Doc. 7-7 at 98, 102).  The ALJ noted that on February 16, 2006, Dr. Herr found that Plaintiff had lost weight and completed his physical therapy work conditioning program.  (Doc. 7-2 at 14, Doc. 7-7 at 9).  Dr. Herr opined that

17

Plaintiff's physical condition allowed him to return to work.  (Doc. 7-7 at 9).  On June 25, 2007, consultative examining physician, Loraine Glaser, M.D. ("Dr. Glaser"), stated that Plaintiff was 261 pounds at 71 inches tall.  (*Id.* at 56).  Dr. Glaser observed that Plaintiff had a normal gait (without the use of an ambulatory aid), could ambulate heel-to-toe without difficulty, was comfortable in both sitting and standing positions, and had no evidence of muscle weakness or atrophy.  (*Id.*).  Even though Dr. Glaser opined that Plaintiff's obesity contributed to his symptoms and weight reduction would diminish his complaints, Dr. Glaser concluded that Plaintiff could perform activities commensurate with his age and intellect, including at least a moderate to marked amount of sitting, ambulating, standing, bending, lifting, reaching, grasping, pushing, pulling, and carrying heavy objects.  (*Id.* at 57-58).

Moreover, on March 17, 2008, Dr. Herr assessed normal gait, normal spinal range of motion, no neurologic deficits in the upper or lower extremities, and very good muscle development.  (*Id.* at 107).  Dr. Herr concluded that Plaintiff had considerable physical capabilities.  (*Id.* at 107-108).  On December 31, 2008, Larry W. Best ("Dr. Best") noted that Plaintiff was significantly obese but did not appear to be in acute distress and could ambulate without difficulty.  (*Id.* at 133).  Based on the opinions of the medical and treatment providers, the ALJ properly determined that Plaintiff retained the ability to perform limited work despite his obesity.  Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### C. Sentence Six Remand

In addition to his statement of errors, Plaintiff moves that, pursuant to Sentence Six of 42 U.S.C. §405(g),[5] a remand is warranted due to "new" and "material" evidence that has been provided by Plaintiff following the ALJ's decision. (Doc. 13 at 19-20). Pursuant to that provision, a court can remand for consideration of new evidence only if Plaintiff establishes that the evidence is material, and also establishes good cause for his failure to present the evidence to the ALJ. *See Bass v. McMahon,* 499 F.3d 506 (6th Cir. 2007); *Brainard v. Secretary of Health & Human Services,* 889 F.2d 679, 681 (6th Cir. 1989). "Material evidence is evidence that would likely change the Commissioner's decision." *Bass v. McMahon,* 499 F.3d at 513 (citation omitted). In this case Plaintiff seeks to introduce his Bureau of Vocational Rehabilitation documents and additional opinions of Dr. Herr and Ms. Foster. (Doc. 13 at 20).

On June 3, 2009, Vicki Grozier, PCC ("Ms. Grozier"), the vocational counselor at the Bureau of Vocational Rehabilitation, met with Plaintiff. He told Ms. Grozier that "he really needed a job." (Doc. 7-8 at 18). However, on June 5, 2009, Dr. Herr opined that Plaintiff could not work full-time or part-time. (*Id.* at 51). In addition, on June 19, 2009, Ms. Foster stated that she was not sure whether Plaintiff could work at all. (*Id.* at 53). On July 13, 2009, Dr. Herr opined that Plaintiff was "permanently totally disabled." (Doc. 7-7 at 171).

The Court notes that this evidence fails to meet the criteria for a Sentence Six

---

[5] Sentence Six of 42 U.S.C. §405(g) provides in part:

> The court may…at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding…

remand.  Specifically, the evidence is not material for purposes of a Sentence Six remand.  Evidence is "material" for purposes of Sentence Six if it is time-relevant, i.e., either it relates to the period on or before the date the ALJ rendered his decision.  *See Jones v. Commissioner of Social Security,* 336 F.3d at 478.  Here, the new evidence presented by Plaintiff was documented after the denial of Plaintiff's benefits and, therefore, is not material to the decision at hand.

Furthermore, as previously stated, evidence is "material" for these purposes only if there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered. *See Bass v. McMahon,* 499 F.3d at 513 (citation omitted).  Plaintiff fails to establish that the ALJ's consideration of this new evidence would have altered her conclusion.  In fact, during the relevant time period, Dr. Herr and Ms. Foster had already opined that Plaintiff could not work, thus these "new" findings would be repetitive.  Plaintiff fails to establish why the same opinions from these sources offered after the relevant time period would have changed the ALJ's decision.

Of course, to the extent that Plaintiff has new evidence that his condition has worsened, he is free to submit a new application for benefits.  *See,* e.g., *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 685 (6th Cir. 1992).  It is the function of this Court only to review whether the "new" evidence warrants remand under Sentence Six of 42 U.S.C. §405(g).  In this case, it does not.

**III. Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT:**

1. The Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE,** and **AFFIRMED**;

2. Plaintiff's request, in the alternative, to remand this case under Sentence Six of 42 U.S.C. §405(g) be **DENIED**; AND

3. As no further matters remain pending for the Court's review, this case be **CLOSED**.

*s/Stephanie K. Bowman*
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ROBERT SWARTZ,

        Plaintiff,

    vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:10-cv-605

Barrett, J.
Bowman, M.J.

## <u>NOTICE</u>

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).